UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFERICK MAJORS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01168-JRO-MG |
| | ) | |
| VEST Officer, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER SCREENING AMENDED COMPLAINT AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Jefferick Majors is a prisoner currently incarcerated at Pendleton Correctional Facility ("Pendleton"). He proceeds on an Eighth Amendment excessive force claim against Pendleton correctional officer Kyle Vest. Majors has filed a motion to amend filed complaint, dkt. 31, which is **GRANTED**. Because Majors is a "prisoner," this Court must screen the amended complaint. 28 U.S.C. § 1915A(a), (c).

## I. SCREENING STANDARD

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE COMPLAINT

The Court accepts Majors's factual allegations as true at the pleading stage but not his legal conclusions. *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)). He pursues claims against Officer Vest, as well as Sergeant Voss and Officer Padgett, against whom claims in the original complaint were dismissed at screening. Dkt. 10.

The complaint alleges that Officer Vest was walking past Majors's cell sometime between 11:00 a.m. and 3:00 p.m. on January 3, 2025, when he noticed a sheet hanging up in Majors's cell. Officer Vest was in the midst of passing out water bottles to inmates and told Majors that he would not receive a bottle until the sheet was taken down. Yet, Officer Vest provided Majors a water bottle.

The sheet acted as a curtain to provide Majors privacy when using the toilet. After receiving the bottle, Majors began urinating in the toilet behind the sheet. Officer Vest pulled the sheet down, exposing Majors mid-urination, and

sprayed Majors in the back of the head with oleoresin capsicum ("OC") spray four or five times.

Sergeant Voss arrived, asked Officer Vest why his body camera was not on, and instructed Officer Vest to leave. Sergeant Voss escorted Majors, handcuffed, to medical staff.

Ultimately, Majors was provided the opportunity to shower, and he was placed into an uncontaminated cell, which contained his sheet from his previous cell. He was not brought to a lockup unit cell because Sergeant Voss determined that he was not a threat. Majors sat on the sheet, which caused burning from OC spray residue. He attempted to clean himself; staff did not offer him further decontamination options. Majors and other inmates began yelling that Majors's items had residual OC spray on them.

Officer Padgett arrived and gathered the contaminated items from Majors between 12:15 p.m. and 2:30 p.m. Padgett directed Majors to remain in the cell, saying, "Voss said you gotta deal with it[;] we don't have time for that[,]" referring to finding Majors another cell. Dkt. 31-1 at 5.

Sergeant Voss, Officer Padgett, and Officer Vest did not direct the cell to be decontaminated by the decontamination team. Another officer ensured it was cleaned by the team. Majors suffered burning skin irritations, rashes, and skin discoloration that have necessitated treatment via medical creams.

## III. DISCUSSION OF CLAIMS

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted.

Majors's claims against Sergeant Voss and Officer Padgett must be **dismissed**. Courts generally find no constitutional violation when the individual is given an opportunity to decontaminate fairly promptly after being exposed to chemical agents or pepper spray. *See Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000) (concluding that waiting 10 to 20 minutes before allowing inmate to wash off chemical agent did not give rise to constitutional violation); *Jensen v. Budreau*, No. 20-CV-997-BBC, 2022 WL 1262137, at *5 (W.D. Wis. Apr. 28, 2022) (finding no constitutional violation where plaintiff was allowed to decontaminate after approximately 40 minutes); *Perkinson v. White*, No. 5:13-CT-3004-FL, 2015 WL 333012, at *4 (E.D.N.C. Jan. 26, 2015) (finding no constitutional violation where use of pepper spray was justified and inmate was allowed to decontaminate approximately 30 minutes later); *Laurensau v. Coi*, No. 12-623, 2014 WL 6774125, *5-6 (W.D. Pa. Dec. 1, 2014) (finding no constitutional violation where use of pepper spray was justified and nurse washed out prisoner's eyes within 30 minutes). Here, Sergeant Voss immediately took Majors to medical staff. He was permitted to shower and moved to an uncontaminated cell, and there is no allegation that Sergeant Voss placed Majors in the cell with the contaminated items or that Sergeant Voss knew the items were and remained contaminated. Similarly, Officer Padgett removed

contaminated items from Majors's cell, and there is no allegation that he ignored or delayed this remedy. The decontamination team was then called, albeit by another officer. At bottom, Majors does not allege that defendants made him wait an unreasonable amount of time before removing the contaminated items and bringing the decontamination team to his cell after removing the items. Nor does he allege that he needed to decontaminate himself again and was denied or delayed. Majors's factual allegations do not support an inference that Sgt. Voss or Officer Padgett were deliberately indifferent to Majors's need for a decontamination shower or to the conditions in his cell.

The claims that **shall proceed** are the following: Eighth Amendment excessive force claims against Officer Vest.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through November 6, 2026**, in which to file a motion to reconsider the screening order.

## IV. CONCLUSION

Majors's motion to amend filed complaint, dkt. [31], is **GRANTED**. The **clerk is directed** to docket the amended complaint, dkt. 31-1, as the operative complaint in this matter. Additionally, Majors's motion to correct errors in material facts, dkt. [30], is **DENIED as moot**, as the now-operative complaint reflects the date of the underlying incident to be January 3, 2025.

Officer Vest shall have **twenty-one (21) days from the date of this Order** to answer the complaint

**SO ORDERED.**

Date: 10/7/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

JEFFERICK MAJORS
261025
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

James Bolen
Lewis and Wilkins
bolen@lewisandwilkins.com

Natalya Justine Cross
Lewis and Wilkins LLP
cross@lewisandwilkins.com

Elijah B. Mollet
Lewis And Wilkins LLP
emollet@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com